# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* B.H.

No. 20-0436 (Kanawha County 18-JA-378)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Grandmother M.H., by counsel Joseph H. Spano Jr., appeals the Circuit Court of Kanawha County's April 23, 2020, order terminating her custodial rights to B.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her custodial rights and in unlawfully removing the child from her home, denying her a preliminary hearing, and not returning the child to her custody.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2018, the DHHR filed an abuse and neglect petition alleging that B.H.'s parents caused non-accidental injuries that resulted in the death of an eight-month-old child, L.H., among other allegations. After filing the petition, the DHHR took immediate custody of B.H., who was temporarily living with petitioner. Petitioner was not listed as a party in the initial petition. Petitioner filed a motion to have the child returned to her custody, which the circuit court denied at the preliminary hearing. The DHHR filed an amended petition the next month, naming petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

as a party.[2] In the amended petition, the DHHR alleged that petitioner knew the child's mother was living in a "drug house" and that petitioner's husband habitually abused alcohol. The DHHR also alleged that petitioner failed to protect six-year-old B.H. by knowingly placing him in his drug-addicted mother's care and, as a result, the child witnessed his eight-month-old sister's death inside of a known drug home. Finally, the DHHR later filed a court summary containing a letter from the child's therapist. The therapist noted that B.H. disclosed instances of abuse in petitioner's home, such as being supervised by petitioner's husband, his grandfather, while the grandfather was intoxicated. According to the child's disclosures to the therapist, this meant the child was often supplying his grandfather with beer and the child recalled at least one instance where his grandfather nearly hit him on the head with a paint can while he was on a ladder. The DHHR filed a second amended petition in August of 2018, adding allegations that L.H.'s autopsy confirmed that methamphetamine was discovered in the deceased infant's system. At the preliminary hearing on the amended petitions, the circuit court ratified the order removing B.H. from petitioner's custody, citing the child's disclosures to DHHR caseworkers. Petitioner did not testify or present any evidence on her behalf at the preliminary hearing to contest the removal order.

Over the course of the next several months, the circuit court held subsequent hearings, adjudicated the parents as abusing and neglecting parents, and eventually terminated their parental rights while holding petitioner's adjudication in abeyance. At these hearings, the DHHR presented several witnesses including a medical examiner, a former occupant of the drug house where the eight-month-old infant died, and a DHHR caseworker. In January of 2020, the circuit court held an adjudicatory hearing as to petitioner where it considered all of the prior evidence, including B.H.'s disclosures during an in-camera interview and prior interview by the DHHR. Petitioner testified that she did not believe B.H.'s mother, her daughter, was addicted to drugs. However, on cross examination, petitioner acknowledged that she filed for guardianship on behalf of the infant child L.H. and begged the mother to "bring us the children." Further, the DHHR put on evidence that petitioner denied B.H. a chance to have or attend a funeral for L.H. The DHHR further put on evidence that the child coped with the loss of his sibling in therapy, where they had a small funeral for her. Considering the evidence at the hearing, the circuit court found petitioner's testimony to be self-serving and not credible in light of petitioner's move to obtain guardianship of B.H. prior to the first petition's filing. The circuit court further found that petitioner had allegedly attempted to file a protective order on behalf of the infant child L.H. before her death. Finally, the circuit court found that petitioner had care, custody, and control of B.H. on the day she permitted him to leave her home with the mother and later witness L.H.'s death. After making these findings, the circuit court adjudicated petitioner as an abusing and neglecting custodian.

In March of 2020, the circuit court held a dispositional hearing wherein petitioner moved for a post-dispositional improvement period while the DHHR and guardian opposed the requested

---

[2]The proceedings below included two of B.H.'s half-siblings, Z.L. and E.L. Petitioner is also the grandmother to Z.L. and E.L. However, petitioner does not assert custodial rights to those children. Further, petitioner makes no mention of these children in her brief on appeal. Because petitioner argues only against the termination of her custodial rights to B.H., this memorandum decision focuses solely on the facts related to that child and addresses only the termination of petitioner's custodial rights to that child.

improvement period. The circuit court denied the motion. The DHHR then presented several pieces of evidence supporting the termination of petitioner's custodial rights, including B.H.'s in-camera testimony. The DHHR also presented findings from its court summary, including a letter from the child's therapist. According to the child's therapist, the child told him/her that he was often left in the custody of petitioner's intoxicated husband; the child often expressed concern for his own safety when left in the care of his grandparents. The child also disclosed to his therapist that petitioner advised him to not discuss his mother's abuse and neglect of his deceased sibling, L.H. Ultimately, the court found that "but for [petitioner's] decision to allow the minor child to leave with her drug addict daughter and go to a known drug house, the minor child would not have witnessed the death of his baby sister." The circuit court recounted additional evidence from prior hearings, finding that the child's therapist noted that discussing the incident or even approaching petitioner's home caused the minor child additional trauma. The circuit court also found that the child's disclosures to his therapist detailing the abuse and neglect he experienced in petitioner's home were consistent with his testimony during the in-camera hearing and interview with the DHHR. The circuit court also noted that the child's therapist recommended against the child having any type of visitation or contact with petitioner during the proceedings and that the child stated he did not want contact with petitioner. In light of these findings, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that there were no services the DHHR could provide to have a successful reunification. As such, the court terminated petitioner's custodial rights.[3] It is from the April 23, 2020, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in allowing the removal of the child from her custody before the DHHR made allegations against her. Petitioner also argues that she was denied a preliminary hearing. Petitioner further contends that the order granting emergency

---

[3]The parents' parental rights were also terminated below. The permanency plan for the child is adoption in his current foster home.

custody should not have been issued because the child was not in imminent danger while he was in her care. According to petitioner, concerns about B.H.'s welfare after L.H.'s death, which occurred prior to the issuance of the order granting emergency custody of the child to the DHHR, were insufficient to justify removal of the child. Moreover, petitioner avers that the circuit court erred in relying on the death of L.H. to justify the removal because prior to the incident there had never been an abuse and neglect petition filed against petitioner. We find that petitioner is entitled to no relief in this regard.

Here, two sections of Chapter 49 of the West Virginia Code are applicable in considering the grant of emergency custody below. The first, West Virginia Code § 49-4-303, provides that a DHHR worker "may take the child into his or her custody" prior to the filing of the petition when

(1) In the presence of a child protective service worker a child or children are in an emergency situation which constitutes an imminent danger to the physical well-being of the child or children, as that phrase is defined in section two hundred one, article one of this chapter; and

(2) The worker has probable cause to believe that the child or children will suffer additional child abuse or neglect or will be removed from the county before a petition can be filed and temporary custody can be ordered.

The second, West Virginia Code § 49-4-602(a)(1), permits a circuit court to order a child into the DHHR's custody for not more than ten days if the court finds that the contents of the abuse and neglect petition demonstrate imminent danger and there are no reasonably available alternatives to removal.

In its application for emergency custody, the DHHR listed petitioner's endangerment of B.H. after L.H.'s death to support its request. The magistrate court found that the circumstances presented constituted imminent danger to the child and ratified the DHHR's application for emergency custody. The DHHR filed an amended child abuse and neglect petition on July 9, 2018, alleging that petitioner allowed B.H.'s drug-addicted mother to take custody of the child, resulting in him witnessing his sibling's death. The DHHR also alleged in the amended petition that petitioner refused to cooperate or communicate with the DHHR. Here, following the DHHR's filing of the petition on July 9, 2018, the circuit court issued an order making findings, based on the contents of the petition, that "[t]here exists imminent danger to the physical well-being of the child[] . . . [and] [t]here are no reasonable available alternatives to the removal of the child[]." As such, the circuit court essentially continued custody of the child with the DHHR. Then, after the filing of an amended petition adding allegations regarding the circumstances in which the child was located, the circuit court held a preliminary hearing in September of 2019. Petitioner did not object to the extended time frame in setting the preliminary hearing, which was necessary for the circuit court to conduct an in-camera interview of the minor child and due to the high number of attorneys and parties involved. After hearing testimony from B.H.'s in-camera interview describing petitioner's actions, the circuit court found probable cause to believe that the child was in imminent danger at the time of the removal from the home and the filing of the petition.

Based on these facts, we find no error in the circuit court's finding, in the order following the preliminary hearing, of probable cause that there was imminent danger to the child. Upon our review, we find no procedural error in the manner the DHHR handled the case below. It is clear that at each stage of the proceedings up to the preliminary hearing, the DHHR was granted emergency custody based upon facts alleged at that time. Further, the requisite findings of imminent danger, pursuant to West Virginia Code §§ 49-4-303 and 49-4-602, were made at the appropriate junctures in the proceedings. Although petitioner claims that the child was not in imminent danger while in her custody, the circuit court found that her actions led to B.H. witnessing his sibling's death and her subsequent lack of communication with the DHHR constituted imminent danger to the child. Therefore, the circuit court properly found that imminent danger existed at the time the emergency removal was ratified.

In any event, to the extent petitioner contends that the circuit court erroneously relied on the fact that the child was in further danger after the death of L.H. to justify the magistrate's issuance of an order ratifying emergency custody, we find no error. The DHHR properly filed a petition and an amended petition, including allegations against petitioner surrounding the death of L.H. Thereafter, a preliminary hearing was held to make findings regarding both petitions, as well as the removal of the child. Based on the evidence presented, the circuit court made appropriate findings under West Virginia Code § 49-4-602 and petitioner was provided an opportunity to participate in a preliminary hearing. Accordingly, we find that the circuit court did not err in considering the allegations contained in the second amended petition, as they were to be considered at the preliminary hearing and could be used as a basis for continuing emergency custody of the child with the DHHR as of the time of the amended petition's filing.

Next, petitioner argues that the circuit court erred in terminating her custodial rights following her substantial compliance with the terms and conditions of the services offered by the DHHR.[4] In support of this assignment of error, petitioner first asserts that she "successfully complied with services offered after the preliminary hearing and had removed any impediment to properly caring for the child." While petitioner argues that her compliance with services removed any impediment to care for the child, this is simply not an accurate statement of the various considerations necessary for the resolution of abuse and neglect proceedings. On the contrary, this Court has held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance . . . *is just one factor to be considered*. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014) (emphasis added). Contrary to petitioner's assertion that her compliance mandated the return of the child to her custody, we have repeatedly stressed that "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which

---

[4]On appeal, petitioner asserts that she is a psychological parent to the child. However, petitioner fails to cite to the record to support such an assertion, no argument on this issue was made below, and the circuit court did not hear evidence as to whether petitioner was a psychological parent. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). As such, any argument on appeal predicated on petitioner's assertion that she was a psychological parent to the child will not be considered.

the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Here, the evidence overwhelmingly supported a finding that a return to petitioner's custody was not in the child's best interests.

First, petitioner's claim that she substantially complied with services below is a misstatement of the record. Petitioner was never granted an improvement period during the proceedings and, despite her representations in her brief on appeal, her alleged compliance was limited to the very few services provided to her, some of which were related to her husband's alcohol abuse. Petitioner was not provided with services such as visitation with the child due to his disclosures and petitioner's own egregious actions which led to the child witnessing his sister's death. In fact, petitioner has not seen the child since L.H.'s death in June of 2018. The denial of such services was further supported by petitioner's own denial of the mother's abuse of the children and by the child's therapist's testimony that the child's reaction to petitioner was so extreme that he would react negatively as they approached Charleston, where petitioner lives. The child's therapist also noted that the child was fearful of the possibility that he would be returned to petitioner's custody. Accordingly, her reliance upon her alleged compliance with services is without merit.

Further, petitioner fails to recognize that the circuit court was presented with testimony about her failure to acknowledge her role in the abuse and neglect the child suffered. According to the record, petitioner denied that the child's mother was addicted to drugs. In addition, petitioner continues to deny responsibility for B.H.'s traumatic experience, simultaneously claiming that she was asleep when the mother took the child and that she was under the impression the mother was taking him to a scrap yard rather than a drug house. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As such, given petitioner's failure to acknowledge her daughter's drug addiction and how her own actions constituted abusive and neglectful behavior, we find no error in the circuit court's determination that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's custodial rights was necessary for the child's welfare. As this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 23, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison